IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>JOSEPH MICHAEL HUBERT,<br><br>   Defendant. | Case Nos. 14-CR-157-GKF<br>      20-CV-476-GKF-JFJ |

**ORDER**

Before the court is the "Request to Vacate the Conviction and Sentence" of defendant Joseph Michael Hubert [Doc. 35], which the court construes as a motion under 28 U.S.C. § 2255 [Docs. 37, 38]. Because Mr. Hubert proceeds *pro se*, the court construes his pleadings liberally. *United States v. Guerrero*, 488 F.3d 1313, 1316 (10th Cir. 2007).

**I. Background**

On September 10, 2015, defendant Joseph Michael Hubert pled guilty to one count of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a) and (e), as charged in Count One of the Indictment. On January 14, 2016, the court entered judgment in which it sentenced Hubert to 180 months imprisonment. Mr. Hubert did not appeal.

Mr. Hubert filed his "Request to Vacate the Conviction and Sentence Based upon Rule 60(b)(2), (4), (6), Fed. R. Civ. P. and Petition for Writ of Error Pursuant to 28 U.S.C. § 1651" on March 2, 2020. [Doc. 35]. On March 23, 2020, the court denied the motion because neither Federal Rule of Civil Procedure 60(b) nor 28 U.S.C. § 1651 applies. [Doc. 37]. The court directed Mr. Hubert to advise the court in writing by May 1, 2020 whether he wished to withdraw his request or have it recharacterized as a § 2255 motion. [*Id.*, p. 7]. On May 4, 2020, the court received a letter in which Mr. Hubert stated he "wish[es] to proceed with a Motion to Vacate, Set

Aside, or Correct [his] sentence under 28 U.S.C. § 2255." [Doc. 38]. Mr. Hubert also requested a § 2255 form from the court [Doc. 38], which the court provided via mail the same day. Now, more than four months later, the court has yet to receive a completed § 2255 form from Mr. Hubert. Based on Mr. Hubert's election, the court now recharacterizes and evaluates his motion under 28 U.S.C. § 2255.

## II. Mr. Hubert's Arguments

Mr. Hubert raises four issues. First, he argues that "[w]hile the court alludes to additional special condition[s] in paragraphs 1 through 5 and 7 through 8 of the special sex-offender conditions[,] [t]he Court never orally pronounced the special condition of supervised release." [Doc. 35, p. 8]. In other words, in Mr. Hubert's view, he was unable to object to the special sex offender conditions imposed at sentencing because they were not read into the record word-for-word at sentencing. He requests the special sex offender conditions be vacated.

However, in his Petition to Enter Plea of Guilty, Mr. Hubert stated he understood that he "will be subject to special conditions of supervision as a registered sex offender." [Doc. 16, pp. 3-4]. And, at the change of plea hearing, the court informed Mr. Hubert that he and his attorney would be permitted to read the presentence investigation report prior to sentencing and, if necessary, to file objections to that report. [Doc. 32, p. 23]. Paragraph 42 of the presentence investigation report informed Mr. Hubert that the standard and special conditions of supervision were available online at the court's website. Paragraph 44 explained "[b]ased on the nature of the instant offense, the Court may consider imposition of ¶¶ 1 through 9 of the 'Special Sex Offender Conditions.'" On January 12, 2016, at his sentencing hearing, Mr. Hubert confirmed he "[a]bsolutely" received a copy of the written presentence investigation report and had a full, fair, and complete opportunity to discuss the contents of that report with his attorney. [Doc. 34, p. 2].

2

Then, "[t]he court recommend[ed] that the defendant be placed in a sex-offender management program where he may receive appropriate treatment. The court further recommend[ed] the defendant be placed at its FCI Seagoville facility." [*Id.*, pp. 8-9]. Further, the court ordered that "[u]pon release from imprisonment, the defendant shall be placed on a term of supervised release for a period of seven years." [*Id.*, p. 9]. The court imposed special conditions found in "paragraphs 1 through 5 and 7 through 8 of the special sex-offender conditions." [*Id.*, p. 10]. Consistent with the oral pronouncement, the court's judgment specifically enumerated the special conditions of supervision. [Doc. 28, p. 4].

Second, Mr. Hubert argues he was denied the right to effective assistance of counsel when his counsel "failed to assure that the written judgment reflected the oral pronouncement at sentencing." [Doc. 35, p. 15]. Further, he argues his counsel failed to deliver "his plea agreement offer from the Government." [Doc. 35, p. 16]. "To this date, Mr. Hubert does not know what was in the plea agreement, to allow him to accept or deny." [*Id.*]. "For this reason the judgment must be voided based upon the violation of the Sixth Amendment." [*Id.*, p. 17]. However, Mr. Hubert and the government did not enter into a plea agreement, though the government made a formal plea agreement offer which Mr. Hubert rejected. [Doc. 32, pp. 2-3, 5]. At the change of plea hearing, defense counsel Mr. Brunton explained he advised Mr. Hubert against a plea agreement because of the appellate waiver contained therein. [*Id.* p. 5]. The court asked Mr. Hubert if he "had a full opportunity to discuss that plea agreement offer . . . with Mr. Brunton as [his] attorney." [*Id.*, p. 6]. Mr. Hubert responded, "Yes, sir, correct." [*Id.*]. The court then asked Mr. Hubert, "[a]nd after that discussion and consideration, is it your personal decision to reject that plea agreement offer?" Mr. Hubert responded, "Yes, sir." [*Id.*].

Third, Mr. Hubert argues "[t]he Court committed reversible error by not ensuring Mr. Hubert committed every element of the offense." [Doc. 35, p. 21]. Specifically, Mr. Hubert argues "[t]he Court did not inquire into Mr. Hubert's intent." [*Id.*]. Accordingly, "[t]he judgment is void. The conviction must be vacated." [*Id.*, p. 24]. However, the court discussed each element of the crime with Mr. Hubert at the change of plea hearing to ensure that he was, in fact, guilty of the charge. [Doc. 32]. Mr. Hubert confirmed he knowingly used an individual to engage in sexually-explicit conduct for the purpose of producing a visual depiction of such conduct during the fall of 2012. [*Id.*, p. 18].[1] Mr. Hubert agreed the individual he used was under the age of 18 years at the time. [*Id.*]. Mr. Hubert admitted the visual depiction was produced using materials that had been mailed, shipped, or transported in and affecting interstate and foreign commerce. [*Id.*]. Mr. Hubert confirmed that some of the acts constituting the criminal activity, that of using the individual to engage in sexually-explicit conduct, occurred in the Northern District of Oklahoma. [*Id.*]. Finally, the court and the attorneys agreed that "the use of the product, the iPhone, [which] was made and shipped in interstate commerce" satisfies the interstate commerce element. [*Id.*, p. 19].

Mr. Hubert then explained to the court that "[i]n the fall of 2012 in the Northern District of Oklahoma, [he] knowingly used equipment that had been mailed, shipped, or transported in interstate commerce to produce a visual depiction involving the use of a minor child engaged in sexually-explicit conduct." [*Id.*, p. 21]. The court asked "just to be entirely clear, once again, you

---

[1] Per 18 U.S.C. § 2251(a), "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . ., with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e)." The court initially asked the defendant if he knowingly "employed, used, persuaded, induced, enticed, or coerced an individual to engage in sexually-explicit conduct for the purpose of producing a visual depiction of such conduct." [Doc. 32, p. 17]. After some discussion with the attorneys, the court narrowed the first element to only include knowingly "used" because the government agreed it was "one of the best terms for what the defendant did." [*Id.*].

used that minor to engage in the sexually-explicit conduct." [*Id.*]. Mr. Hubert confirmed "Yes, sir." [*Id.*].

Fourth, Mr. Hubert argues he "did not have the mental capacity to assist in his defense" and his counsel failed to request a *Dusky* hearing. [Doc. 35, p. 27 (citing *Dusky v. United States*, 362 U.S. 402 (1960)]. In support, Mr. Hubert cites comments from his attorney regarding Mr. Hubert's ability to understand the 15-year mandatory minimum in the case that Mr. Hubert's "intellectual capacity is certainly not at the Mensa range" and that counsel felt Mr. Hubert "was a teenager in an adult's body." [*Id.* (quoting Doc. 33, p. 6)]. Because a *Dusky* hearing was not conducted, Mr. Hubert argues the court committed "reversible error" and that he was denied "due process and the right to effective assistance of counsel." [*Id.*, p. 30]. However, in his Petition to Enter Plea of Guilty, Mr. Hubert represented to the court that his "mind is clear" and he has "never been confined in any institution for the treatment of mental illness" nor "been adjudicated mentally incompetent." [Doc. 16, p. 4]. Further, "[n]o psychiatrist, physician, or psychologist has ever found [him] to be mentally ill" and he knew "of no reason why [his] mental competence at the time of the commission of the alleged offense(s), or at the present time, should be questioned." [*Id.*]. And, based on Mr. Hubert's demeanor and the clarity and content of his responses at the change of plea hearing, the court found "that the defendant is fully competent and is capable of entering an informed plea, that he's aware of the nature of the charge and the consequences of his guilty plea, and that his plea of guilty to Count 1 of the Indictment is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." [Doc. 32, p. 23].

### III. Legal Standard

"A § 2255 motion must be filed within one year of the latest of four qualifying events." *United States v. Snyder*, 871 F.3d 1122, 1125 (10th Cir. 2017) (citing 28 U.S.C. § 2255(f)). Relevant here, this is the latest of either "the date on which the judgment of conviction becomes final" or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2255(f)(1), (4). Where a defendant does not file a direct appeal, the conviction becomes final when the time to file an appeal expires—14 days after judgment is entered. Fed R. App. P. 4(b)(1)(A)(i); *United States v. Prows*, 448 F.3d 1223, 1227-28 (10th Cir. 2006).

### IV. Analysis

Mr. Hubert did not appeal the judgment entered against him on January 14, 2016. [Doc. 28]. Accordingly, his conviction became final on January 28, 2016. Thus, under § 2255(f)(1), Hubert had until January 28, 2017 to file a timely § 2255 motion. Because he did not file his motion until more than three years after the deadline, Mr. Hubert's motion is time barred under § 2255(f)(1).

Mr. Hubert argues his motion is nonetheless timely because it relies on "newly discovered evidence," that is, the transcript of the proceedings which were produced on January 14, 2020 and mailed to Mr. Hubert in February 2020. [Doc. 35, p. 2]. But, the information contained in the trial transcripts does not constitute new facts which Mr. Hubert only recently discovered through the exercise of due diligence. *See* 28 U.S.C. § 2255(f)(4). Instead, the transcripts memorialize facts which were discovered, or could have been discovered, at the change of plea hearing held on September 10, 2015 and the sentencing hearing held on December 14, 2015 and January 12, 2016.

6

*See United States v. Banuelos-Munoz*, 182 F.3d 933 (Table) (10th Cir. 1999) (unpublished)[2] ("[W]e are unable to say . . . that the facts supporting [defendant's] claims were dependent on the transcript.").

Further, Mr. Hubert does not cite any reason for his delay in requesting the transcripts. Mr. Hubert indicates that he "immediately ordered the transcript of the proceedings" after he reviewed his files within the Bureau of Prisons and "noticed some special conditions in his PSR in which he never heard before." [Doc. 35, p. 2]. These circumstances do not provide a basis for Mr. Hubert to invoke § 2255(f)(4). Nor do they warrant equitable tolling. *See United States v. Oakes*, 445 F. App'x 88, 94 (10th Cir. 2011) (unpublished) ("[L]ack of access to one's own legal materials must be coupled with due diligence to warrant equitable tolling."); *Washington v. United States*, 221 F.3d 1354 (Table) (10th Cir. 2000) (unpublished) ("Although [defendant] argues he was unable to obtain his transcripts, he presented no evidence demonstrating his efforts to obtain them or the district court's inability to provide them.").

Upon review of the briefing, record, and applicable case law, the court is satisfied that no other alternative limitation period applies. Mr. Hubert does not claim to be factually innocent such that he potentially could be entitled to an exception to the limitations period. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013). And, even to the extent Mr. Hubert argues he is mentally incompetent, equitable tolling is not warranted because Mr. Hubert has represented in his Petition to Enter Plea of Guilty that "[n]o psychiatrist, physician, or psychologist has ever found [him] to be mentally ill" and he knew "of no reason why [his] mental competence at the time of the commission of the alleged offense(s), or at the present time, should be questioned." [Doc. 16, p.

---

[2] "Unpublished decisions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(A).

4]; *see United States v. Penn*, 153 F. App'x 548, 550-51 (10th Cir. 2005) (unpublished) (Equitable tolling was not warranted where defendant stated in his Petition to Enter Plea of Guilty "that he knew of no reason why his mental competence should be questioned at the time of the commission of the offense or at the time of the entry of his plea."); *id.* ("[E]quitable tolling for mental incapacity should be limited to the objective standard of adjudication or institutionalization to protect defendants against specious allegations of mental incompetence advanced in desperate efforts to save time-barred claims." (citing *Bassett v. Sterling Drug, Inc.*, 578 F. Supp. 1244, 1248 (S.D. Ohio 1984)) (alterations omitted)).

Mr. Hubert's motion is time-barred because it was filed more than three years after his judgment became final.  28 U.S.C. § 2255(f)(1).

## V. Conclusion

WHEREFORE, defendant's "Request to Vacate the Conviction and Sentence" [Doc. 35], which the court construes as a motion under 28 U.S.C. § 2255, is dismissed as untimely.

Further, the court denies a certificate of appealability because Mr. Hubert has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also* Rule 11(a), Rules Governing Section 2255 Proceedings.

IT IS SO ORDERED this 24th day of September, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE